## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

David M. Hubbard Sr.
2333 WoodBark Lane
Suitland, Maryland 20746-1377
H- (301) 736-3850
W-(202) 707-3828

CIVIL ACTION NO._____

VS.

James H. Billington, Librarian of Congress
Library of Congress
101 Independence Avenue S.E. LM- 608
Washington, D.C. 20540

### I.    DISCRIMINATION COMPLAINT

Plaintiff, a minority employee who has been employed or has sought employment advancement in the Library of Congress, from 1993 to the present, has been denied advancement in spite of his experience, training, and outstanding performance. Plaintiff contends that he has been discriminated against based on his color, national origin, and/or race by the Library of Congress in violation of the Civil Rights Act of 1964 as amended, 42 U.S.C. Sec. 2000e and the Civil Rights Act of 1991, 42 U.S.C. Sec. 1981a.  Plaintiff alleges that the Library of Congress' personnel policies, practices, and procedures discriminate against him because he is a minority employee on the basis of race, national origin, and/or color in the following areas: selections for competitive positions and promotions, transfers, assignments, and other career enhancing opportunities; preferred assignments; discipline; awards and bonuses; training; harassment and hostile work environment based on race, national origin, color, systemic retaliation, and other terms and conditions of employment.  On the basis of these violations, plaintiff seeks equitable relief including but not limited to back pay, front pay, other loss compensation, compensatory damages, a declaratory judgement, and an injunction requiring the Library of Congress to cease and desist these illegal

acts and remedy the effects of its illegal conduct.

II    **JURISDICTION EXHAUSTION OF ADMINISTRATIVE REMEDIES**.

Jurisdiction of this court is based upon 42 U.S.C. Sec. 2000e-5, 2000e-16, and 28 U.S.C. Sec.1331 (federal question) and 1343 (civil rights).  Venue is proper in this District pursuant to 28 U.S.C. Sec. 1391(e) and 42 U.S.C. 2000 e-5(f).

On September 10, 2007, Plaintiff filed a complaint of discrimination with the Library of Congress Equal Employment Opportunity Complaints Office. **See Attached Exhibit A.**

On November 15, 2007 the Plaintiff received a notice of his right to sue from Mr. Ricardo H. Grijalva, Chief, Equal Employment Opportunity Office, Office of Workforce Diversity at the Library of Congress.  Mr. Grijalva cited Library of Congress Regulation (LCR) 2010-3.1, Section 7 (e) as the authority providing Plaintiff the right to sue. **See Attached Exhibit B.**

On August 29, 2007 Dr. Wilbur R.Valentine, Equal Employment Opportunity Counselor at the Library of Congress, sent the Plaintiff a notice of Final Interview and Right To File a Formal Complaint.  **See Attached Exhibit C.**  The Plaintiff and his representative received no final interview with by Mr.Valentine.  The Plaintiffs rights were denied because Library of Congress regulation (LCR) 2010-3.1 provides for a final interview.  **See Attached Exhibit D.**  Exhibit D was a letter from Plaintiff to Dr. Wilbur R.Valentine dated September 4, 2007.

On October 18, 2007 the Plaintiff sent a letter to Mr. Ricardo H. Grijalva enquiring about the status of his EEO Case No. 07-36.  **See Exhibit E.**  On October 22, 2007, Mr. Grijalva responded to the Plaintiff by letter in response to Plaintiff's enquiry. **See Attached Exhibit F.**  The Plaintiff responded to Mr.  Grijalva on October 22, 2007.  **See Attached Exhibit G.** The Plaintiff sent Mr. Ricardo H. Grijalva a letter on November 28, 2007.  **See Attached Exhibit H.**  This exhibit is a reply to Mr. Grijalva's letter of

November 15, 2007, cancelling the Plaintiffs complaint.  The evidence is clear that the Plaintiff has exhausted all of his administrative remedies.

## **PRAYER FOR RELIEF**

The foregoing claim against the Library of Congress establishes a pattern and practice of discrimination on the basis of color, race, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000c, as amended, and the Civil Rights Act of 1991, 42 U.S.C. Sec. 1981a.

Therefore, the Plaintiff prays that the following relief  be granted to him and to those he represents should the case become a class action.

Enter a declaratory judgement that Defendant's conduct as alleged herein has violated Plaintiff's civil rights of a minority employee of the Library of Congress under 42 U.S.C. Sec. 2000e and 42 U.S.C. Sec. 1981a;

Enter a permanent injunction barring Defendant from continuing to engage in the illegal and discriminatory conduct alleged herein;

Award compensatory damages according to proof for the Plaintiff and up to the legal limit and back pay and other such damages as would compensate fully the Plaintiff for the emotional distress and other harm alleged herein.

Award reasonable attorney fees, expect fees and costs pursuant to 42 U.S.C. Sec. 1988 and 42 U.S.C. Sec. 2000e; and order other such relief as just and proper.

The Plaintiff in the instant case is also a Plaintiff in the **Christine Mills, et al, Vs. James H. Billington Class Action,** now pending before the Honorable Henry H. Kennedy. See May 16, 2006 Memorandum Opinion And Order decision by the Honorable Judge Henry H. Kennedy detailing the violation committed by Mr. Ricardo H. Grijalva upon the illegal cancellation of employee discrimination complaints.  **See Christine Mills, et al, Vs.**

**James H. Billington, 04-02205, (DDC).**

Plaintiff requests a trial by jury.

Respectfully Submitted, Pro Se
David M. Hubbard Sr.

_____

2333 WoodBark Lane
Suitland, Maryland 20746-1377

## <u>Certificate of Service</u>

I hereby certify that on February 15, 2008, a copy of my Discrimination Complaint was mailed to all defendants by certified mail at the following address(es):

Elizabeth Pugh, Esq.
Library of Congress
Office of the General Counsel LM-603
Washington, D.C. 20540

Jeffrey A. Taylor
United States Attorney
For The District of Columbia
Judiciary Center Building
555 Fourth Street NW
Washington, DC 20530

## I (a) PLAINTIFFS

DAVID M. HUBBARD SR.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**  PRINCE GEORGE
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

## DEFENDANTS

JAMES H. BILLINGTON, LIBRARIAN OF CONGRESS

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  DISTRICT OF CO
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

ATTORNEYS (IF KNOWN)

Case: 1:08-cv-00254
Assigned To : Robertson, James
Assign. Date : 2/15/2008
Description: Employ Discrim.

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 3 Federal Question
(U.S. Government Not a Party)

◉ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE an x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**○ E. General Civil (Other)     OR     ◉ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if
not administrative agency
review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ◉ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

CIVIL RIGHTS ACT OF 1964 AS AMENDED, 42 U.S.C. SEC. 2000e AND THER CIVIL RIGHTS ACR OF 1991, 42 U.S.C. SEC. 1981a. ( employment )

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 2/15/2008   SIGNATURE OF ATTORNEY OF RECORD _[signature]_

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# Library of Congress - Equal Employment Opportunity Complaints Office
## COMPLAINT OF DISCRIMINATION
### (LCR 2010-3.1)
### (Because of Race, Color, Religion, Sex, National Origin, Age, Physical or Mental Disability, Sexual Harassment, and/or Reprisal)

**1. Full Name**

DAVID M. HUBBARD SR.

**2. Address**

2333 WOODBARK LANE

| 3. City | State | Zip Code |
|---|---|---|
| SUITLAND | MARYLAND | 20746-1377 |

**4. Telephone Numbers (including area code)**

Home: (301) 736-3850        Work: (202) 707-3828

**5. Are you now employed?**

[X] Yes (Answer A, B, C, and D)    [ ] No (Continue with Question 6)

**A. Name of Employer**

LIBRARY OF CONGRESS. U.S. COPYRIGHT OFFICE

**RECEIVED**

**B. Address of Employer**

101 INDEPENDENCE AVE. S.E.

SEP 1 0 2007

*129*

**C. City, State, Zip Code**

WASHINGTON, D.C. 20540

Equal Employment Opportunity
Complaints Office

**D. Current Position Title, and Grade or Salary**

LIBRARY TECHNICIAN, GS-8, $ 54,194.00

**6. Date on which alleged discrimination took place (Month/Day/Year)**

AUGUST 7, 2007

**7. Name(s) and Title(s) of Person(s) you believe discriminated against you**

( SEE ATTACHED )

**8. Name of Office which you believe discriminated against you**

U.S. COPYRIGHT OFFICE, LITERARY SECTION, EXAMINING

**9. Indicate below alleged basis of discrimination**

| [X] A. Race. State your race | [X] B. Color. State your color | [X] C. Religion. State your religion | [X] D. Sex. State your sex |
|---|---|---|---|
| AFRICAN AMERICAN | BLACK | CATHOLIC | MALE |

| [X] E. National Origin. State your national origin | [X] F. Age. State your age, and date of birth |
|---|---|
| AFRICAN AMERICAN | 54, NOVEMBER 21, 1952 |

| [ ] G. Physical or Mental Disability. State the nature of your disability | [ ] H. Sexual Harassment. State your sex |
|---|---|
| NA | NA |

**[ ] I. Reprisal. Explain connection with the EEO process**

NA

458 (2000/03)

Page 1 of 2 pages

**EXHIBIT A**

Continue next page.

10. Do you have a Representative?
☑ Yes (Answer A, B, C, and D)    ☐ No (Continue with Question 11)

A. Name of Representative

HOWARD R. L. COOK

B. Telephone Number of Representative (include area code)

(301) 336-1825

C. Address of Representative

10323 SEA PINES DRIVE

D. City, State, Zip Code

MITCHELLVILLE, MARYLAND 20721

11. Explain how you were discriminated against (treated differently than other employees or applicants) because of your color, race, religion, sex, national origin, age, physical or mental disability, sexual harassment, or because of reprisal. What action(s) was taken against you that you believe to be discriminatory? What harm, if any, were you subjected to in your work situation as a result of that action? (Attach continuation sheet, if necessary.)

( SEE ATTACHED )

12. What corrective action(s) are you seeking?    1. 33 Million Dollars in damages.

2. Awarded a GS-13 position in the Library of Congress. Effective immediately and retroactively.

3. That the Library of Congress and the U.S. Copyright Office be ordered to cease and desist from their discriminatory actions. Primarily, in regard to the "time-in-grade" requirement as stipulated in the AFSCME 2477 Bargaining Agreement between the Union and Library management. The "time-in-grade" requirement as it stands in the Union Contract is illegal.

13. Have you discussed your complaint with an Equal Employment Opporturnity Counselor?

☒ Yes. Name of Counselor: ___DR. WILBUR R. VALENTINE___
☐ No

14. Have you raised this issue in another forum?    NO

☐ Dispute Resolution Center. Name of Convenor: _____
☐ Grievance

15. Date of this complaint (Month/Day/Year)

September 10, 2007

16. Complainant's Signature

David M. Hubbard Jr.

Complaint of Discrimination

Page 2 of 2 pages

**Nature of Allegations 14**                    August 15, 2007

**(1)**    The U. S. Copyright Office has discriminated against me and other minorities, by **not providing** us with official Position Descriptions.  On **August 6, 2007,** the "Business Process Re-Engineering " is to officially begin. We were to receive new position descriptions. Under **Article 15, Section 1,** each Unit member will be provided with an **official** description of his/her duties and responsibilities in the form of a position description (PD) on the day the employee assumes his/her duties.  All incumbent Unit employees will be supplied with official position descriptions. As of **August 15, 2007,** my co-workers and I have not received official position descriptions. The Library of Congress and the U. S. Copyright Office are in violation of this and other Articles.  **Article 15, Section 5, states:** At the time of the initial appointment to a position in a plan, the employee shall be provided with a copy of his/her position description and all others in the plan, together with written criteria for advancement to successively higher levels in the plan. I **have not been provided** a copy of my **official** position description.  **Article 15, Section 7, states:** The Library recognizes its responsibility to provide **training,** determined to be necessary and appropriate, for an employee to perform successfully in his/her position and to advance in a promotion plan, consistent with progress in the position. I and my fellow co-workers have received little or no training because the new "Siebel System" is not working. How can we be trained properly?  More time and money has been spent trying to fix this system, than training employees. Due to software problems training sessions for employees cannot be implemented. The lack of training and information as to promotion status, denies the incumbent the ability to have knowledge about economic progress in the position.

**(2) Collective Bargaining Agreement between the Library of Congress Management and AFSCME 2477.**

The Collective Bargaining Agreement between the Library of Congress and the Employees' Union, AFSCME Local 2477, is **illegal**. Article 15, Section 8, Article 17, Section 7, Article 6, Article 43, and Article 44 have been violated.  **See Exhibit A, Letter to James H. Billington, Librarian of**

**Congress July 26, 2007.**

**(3) Response to Jeffrey A. Cole's email on milestones and the Re-Engineering Update.  See Exhibit B and Exhibit C.**

In its report, the House Appropriations Committee congratulated the management and staff of the Copyright Office on the completion of the 'Business Process Re-engineering Project.' **This is a misrepresentation of reality.** Not only has the BPR not been completed, **"It doesn't work."** In addition, the Copyright Office has wasted $60,000,000 on this project . My question to the Appropriation Committee members is : **May I see a copy of the report and a list of the Appropriation Committee members who witnessed this???**

Dr .James H. Billington, the Office of the Inspector General, Ms. Mary Beth Peters, Ms.Julia Huff, Mr. Jeffrey Cole, and members of the Appropriations Committee, have tried to **cover-up** the waste of over **$60,000,000,** on the re-engineering project at the Copyright Office.  This will not work because there are too many people who know this new Siebel System does not work. Mr. Coles message was only a "smokescreen" to further cover-up this fiasco.  The failure of the system **discriminates** against me and other employees who are forced to work under conditions prohibited by the union contract.

The frustration of this re-engineering project is taking its toll on managers and employees. Once the Allegations of Discrimination are investigated by the EEO office, the following people should be contacted as witnesses: **Ivan Proctor, Beth Lawery, Wayne Crist, Joy Burns, Jim Shapleigh, Cynthia Hutchins, Calvin Mines, Clifton Knight, Jewel Player, James Moore, John Ashley, Virginia Giroux, Bernice Matthews, Joanna Corwin, Mary Jones, William Shuttleworth, Bill Briganti, Joyce Malloy, John Greene, Ginean Moser, Debbie Case, and Sandra Ware.** All of these employees are aware of the problems the new Siebel System has caused. Some of these people actually have worked on and tested this system. Did the Appropriations Committee speak to any of these employees before they released their report? I **do not** see how such a report could be released

without interviewing some of the managers, supervisors and employees. It seems to me the Appropriations Committee report began in the Inspector Generals Office and ended in the Administration Office of the Register of Copyright.

There comes a time when Ms. Mary Beth Peters, Ms. Julia Huff and Mr. Jeffrey Cole must admit or come to a conclusion the Business Process Re-Engineering Project has been a failure. At this point, the integrity of the Copyright Office and the entire Library of Congress places me and each employee in the Copyright Office, at a disadvantage and guarantees **"disparate treatment"** of minority employees.

The management of the Library of Congress by administration, the management of the Copyright Office, the management of the Human Resources Department, and the Classification Office maintains a dual classification system known as "professional" and "non-professional". African Americans dominate the non-professional classification system, which adversely impacts me as an African American. This adverse impact prohibits me from obtaining maximum economic benefit in my employment at the Library of Congress.

**(10) Name(s) and Title(s) of Person(s) you believe discriminated against You.**

(1.) James H. Billington, Librarian of Congress

(2.) Mary Beth Peters, Register of Copyrights and Associate Librarian For Copyright Services.

(3.) Julia B. Huff, Chief Operating Officer, Business Process Re-Engineering, Copyright

(4.) Jeffrey Cole, Re-Engineering Project Manager, Copyright

(5.) William Collins, Policy and Planning Program Manager, Copyright

(6.) David Carson, General Counsel, Copyright

(7.) Kent Dunlap, Principal Legal Advisor, Copyright

(8.) Thomas Bland, Supervisor, Literary Section, Copyright

(9.) Tom Skallerup, Supervisor, Literary Section, Copyright

(10) Susan Todd, Section Head, Literary Section, Copyright

# HCTSF

## Howard R. L. Cook and Tommy Shaw Foundation for Black Employees of The Library, Inc.

Post Office Box 6268 • Largo, Maryland 20792-6268 • 202-546-3905 • 301-336-1825

*The HCTSF serves as a catalyst to educate future leaders and promote collaboration among communities and business leaders, minority-focused organizational leaders, and to effect positive and sustainable change in the African-American community.*

The Library of Congress                                          July 26, 2007
James H. Billington, Librarian of Congress
101 Independence Avenue SE
Washington, D. C. 20540

Dear Mr. Billington:

The **Howard R. L. Cook and Tommy Shaw Foundation for Black Employees of the Library, Inc.** wishes to express our grave concern about certain items in the Library of Congress Employees' Union, AFSCME 2477, Collective Bargaining Agreement between the Library of Congress management and the union. This contract agreement was dated July 5, 2007.

**Article 15, Section 8,** of the agreement between the union and Library management provides a "time- in- grade" requirement. In the **Howard R. L. Cook et al, Vs. James H. Billington, 82-0400,** the court ruled that "time- in- grade" requirements were **illegal.** Prior to the court's decision, the Library management imposed strict adherence to the "time- in- grade" requirement for in-house Library employees. Most adversely impacted by the time- in- grade requirement were African American employees. (discriminated against) At the same time the Library of Congress management routinely waved the time- in- grade requirement for outside applicants who were primarily white. The white applicants received preferential treatment at the expense of in house African American employees. Our Foundation cannot accept this **illegal** requirement. The Library of Congress management should not have imposed such an illegal requirement upon the union. Had the unions participated in the **Cook Class Action,** they would have known better.

**Article 17, Section 7,** of the agreement between the union and the Library of Congress management provides for a "time- in- grade requirement. The court ruled in the **Howard R. L. Cook et al, Vs. James H. Billington, 82-0400,** against "time- in- grade". The court found that most **adversely impacted** (discriminated) against by the "time- in- grade" requirement were **African American Employees** who had been employed at the Library of Congress for many years, but were not promoted because of the strict adherence to the "time- in- grade" requirements.                **EXHIBIT A**

On the other hand outside applicants, who were primarily white had been advantaged by the claim that they had comparable experience on the outside in their employment to fulfill the "time- in -grade" requirement. The U. S. Court for the District of Columbia ruled against such unsupported claims, as being **illegal.** The leadership of the Howard R. L. Cook & Tommy Shaw Foundation for Black Employees of the Library, Inc. find that these "time- in- grade" requirements are unacceptable.

**Article 17, section 7,** of the agreement between the union and Library management provides for minimal education, training, and a formula of substituting experience for education. The U. S. Supreme Court has ruled that education is secondary to the ability to perform the duties of the position. In other words, the need is only the ability to do the job. So, when making education requirements the demand should only be in specific areas, such as, if the employer needs a doctor , he or she should have completed medical school. The emphasis placed on library science in the Library of Congress is misplaced as a qualifying employment requirement as practiced at the Library of Congress. See **Howard R. L. Cook, et al, Vs. James H. Billington, 82-0400.** The Library of Congress management is well aware of the provisions of the **Cook Case,** and union officials should have been aware, however, the unions did not participate in the **Howard Cook Case, the Christine Mills Case, or the Hubbard Case.** Under the circumstances the leadership of the Foundation is on guard for any attempt to reverse the provisions of the landmark **Howard R. L. Cook, et al, Vs. James H. Billington, 82-0400.**

**Article 6,** of the agreement between the union and the Library of Congress management provides for transformation within the Library of Congress. This article discusses the Library's mission in the 21st Century. The 21st century **does not** provide for **violation of any rights** of employees. However, the agreement is so broad that great opportunity exists under the agreement to allow rights of the employees to be violated. We caution the Library management and the union not to allow **Article 6** to be used as an instrument to violate employees rights.

**Article 43,** of the agreement between the union and Library management provides no safe haven for long term bargaining unit employees of the Library of Congress. It appears that **contract** employees will be favored in advance of Library of Congress permanent employees. Under these circumstances, as history tells us, African American employees will be most **"adversely impacted"**. We can conclude this because Local 2477 is the union which represents "non- professional " employees. The fact that the Library of Congress has unions designated as **"professional"** and **non-professional"** is discriminatory and projects classism by the mere existence of such unions. The Library of Congress dual classification system of non-professional and professional demonstrates the nature of classism and racism in the Library of Congress. See **Christine Mills, et al, Vs. James H. Billington, 04-02205.**

**Article 44,** provides for alternative disciplinary action in lieu of traditional discipline. We congratulate management and the union on this article because it appears that we might be moving into an enlightened time of management employee relationships pertaining to discipline. To date, as far as we can determine, African American employees have been most adversely impacted by capital punishment when adverse actions have been taken. In the majority of these cases affecting African American employees, with respect to adverse actions, the punishment was always to have the employee terminated from employment, (fired). It was revealed in Cook Vs. Billington case, that African American employees were most adversely impacted by adverse actions. We congratulate management and the union for incorporating Article 44 and 45 in the contract on July 5, 2007. If , these two articles are allowed to be applied in reality, then the opportunity for improved employee management relationship and equality of treatment will greatly be improved.

Sincerely,

David M. Hubbard Sr.

_David M. Hubbard Sr._

Lead Representative

David M. Hubbard Sr., et al, Vs. James H. Billington, CV. 06-1734

_Christine Mills_

Christine Mills

Lead Representative

Christine Mills, et, al, Vs. James H. Billington, 04-02205

cc :Michael J. Snider, Esq. Class Attorney
     Jeffery C. Taylor, Esq. Class Attorney
     Jo Ann Jenkins, Chief of Staff
     Saundra A. Smith, President AFSCME 2477
     Charles M. Carron, Chief Negotiator for Management
     Board of Directors, Howard R. L. Cook & Tommy Shaw
     Foundation for Black Employees of the Library, Inc.

*P.S. Your gift to the HCTSF will help ensure the success of our mission. Please give today and please give generously. Thank you in advance for your tax-deductible gift.*

**"Anyone who kneels before GOD can stand before any man."**

**EXHIBIT B**

## David M Hubbard - Re:Re-engineering update

| | |
|---|---|
| **From:** | David M Hubbard |
| **To:** | Cole, Jeffrey A |
| **Date:** | 8/6/2007 9:01 AM |
| **Subject:** | Re:Re-engineering update |

TO WHOM IT MAY CONCERN:

DO YOU ACTUALLY THINK EVERY PERSON IN THE COPYRIGHT OFFICE IS STUPID? FIRST, WHATEVER DEAL YOU GUYS MADE WITH THE INSPECTOR GENERALS OFFICE OF THE LIBRARY OF CONGRESS AND THE HOUSE APPROPRIATIONS COMMITTEE TO GET THIS PATHETIC "SIEBEL SYSTEM" TO FUNCTION WILL NOT WORK.

IT IS ALREADY ON RECORD THE HOUSE ADMINISTRATION COMMITTEE AND THE JOINT COMMITTEE ON THE LIBRARY, ALREADY KNOW OF THE PROBLEMS NOT ONLY WITHIN THE COPYRIGHT OFFICE BUT THROUGHOUT THE ENTIRE LIBRARY OF CONGRESS. SOONER, OR LATER THERE WILL BE AN INVESTIGATION INTO THE $60,000,000 WASTED ON THIS RE-ENGINEERING PROJECT. WHAT GETS ME IS THAT MARY BETH PETERS AND JULIA HUFF HAVE SPENT MORE THAN HALF THEIR LIFE IN THIS OFFICE ONLY TO BE MISDIRECTED BY INCOMPETENT MANAGERS. FURTHER, I CANNOT BELIEVE THAT THE APPROPRIATIONS COMMITTEE WOULD GO ALONG WITH THIS SCHEME.(SEE "THE GAZETTE" July 27, 2007, PAGE 5 LAST PARAGRAPH UNDER THE TITLE COPYRIGHT OFFICE.) IF I WERE A MEMBER OF THE APPROPRIATIONS COMMITTEE I WOULD ASK MORE QUESTIONS TO THE ONES WHO WILL ACTUALLY BE USING THIS SYSTEM. EITHER THE APPROPRIATIONS COMMITTEE IS PART OF THIS SCHEME OR THEY ARE THE MOST IGNORANT PEOPLE EVER TO WORK IN CONGRESS.

IN REGARD TO THE UNIONS, THEY ARE PAWNS TO MANAGEMENT. MANAGEMENT NEEDED THEM SO THIS "ILLEGAL" RE-ENGINEERING SCHEME COULD BE IMPLEMENTED. THEY SERVE NO PURPOSE BECAUSE THEY DO NOTHING FOR THE EMPLOYEES. AN EXAMPLE OF THIS IS THEY ALLOWED THE "TIME-IN-GRADE" REQUIREMENT TO RECONSTITUTED IN TO THE UNION CONTRACT. THIS ALLOWED MANAGEMENT TO WRITE OUR POSITION DESCRIPTIONS ILLEGALLY. WHAT YOU AND THE UNION **DO NOT REALIZE** IS JUDGE NORMA HOLLOWAY JOHNSON OF THE U.S. DISTRICT COURT OF THE DISTRICT OF COLUMBIA,RULED IN THE **HOWARD R. L. COOK, VS. JAMES H. BILLINGTON, 82-0400,** THAT "TIME-IN-GRADE" REQUIREMENTS ARE ILLEGAL. SO THE UNION CONTRACT SIGNED ON July 5, 2007 IS **ILLEGAL.** ALL OF THIS WILL BE PROVEN IN THE **CHRISTINE MILLS ET AL, VS. JAMES H. BILLINGTON,** 04-02205, AND DAVID M. HUBBARD SR, VS. JAMES H. BILLINGTON, CV. 06-1734.

YOU SPENT A LOT OF TIME IN YOUR E-MAIL TALKING ABOUT NEW FACILITIES. WHAT YOU DID NOT MENTION IS THAT THE PEOPLE WHO ARE TESTING THIS SYSTEM ARE HAVING MANY PROBLEMS WHICH SHOULD HAVE BEEN RESOLVED MONTHS AGO. IN ADDITION, YOU ARE STILL PAYING CONTRACTORS MILLIONS OF DOLLARS FOR A SYSTEM THAT SHOULD HAVD BEEN UP 2 YEARS AGO. FURTHER THE 1,000 APPLICANTS WHO SIGNED UP TO BE BETA TESTERS, MORE THAN HALF OF THEM WERE UNABLE TO USE THE SYSTEM.

I ONLY HOPE THIS SYSTEM WILL BE UP IN THE WEEKS TO COME. IF NOT THE APPROPRIATION COMMITTEE AND YOU WILL BE EATING YOUR WORDS. DAVID CARSON SAW WHAT WAS COMING. I DON'T BLAME HIM FOR GOING INTERNATIONAL.

**SINCERELY,**
**DAVID M. HUBBARD SR.**
**U. S. COPYRIGHT OFFICE**
**VA EXAMINING DIVISION**
**7/3828**

>> Jeffrey A Cole 08/04/07 4:32 PM >>>
This weekend and Monday, August 6, mark several major milestones for our reengineering project. Here is an update on these milestones and other recent activities.

Reorganization

The reorganization that affects all staff in the Cataloging, Copyright Acquisitions, Examining, Information and Reference, and Receiving and Processing Divisions is effective August 5, 2007. (The Offices of the Register, General Counsel, Policy and International Affairs, Adminstrative Office, CTO, and Licensing Division are not part of this reorganization.) The following changes are effective August 5:

Cataloging and Examining no longer exist. They are replaced by the Registration and Recordation Program (RRP), that comprises three divisions - Literary, Performing Arts, and Visual Arts and Recordation. The RRP is led by the new Associate Register for Registration and Recordation, Nanette Petruzzelli.

The Receiving and Processing Division is renamed the Receipt Analysis and Control Division (RAC).

The Information and Reference Division is renamed the Information and Records Division (I&R).

There are also some internal organizational changes within the reorganized divisions, and all staff in those divisions have new position descriptions. Some positions change a lot, others change only a little. Notwithstanding that all staff are officially in new positions effective August 5, some staff will continue to perform the duties of their former positions until material in process in the old system is completed.

Congratulations and thanks to Bruce McCubbin, Senior Administrative Officer, and his Admin. Office team, especially Sandy Lewis-Bradley and Katrina Anderson, for heroic efforts to complete the reorganization by this target date. Special thanks are also due to LC Human Resources Services and countless CO staff who played key roles in this effort. Finally, Mary Kay Wallk has done a superb job in planning and executing the training that is essential for staff to move into their new duties.

Facilities

The new Copyright Office facilities in the Madison Building are essentially complete. The office space has been reconfigured with new walls, carpet and flooring, lighting, hallway doors, and furniture. Many infrastructure improvements have also been made, including the sprinkler system, electrical, voice and data wiring, and security system. As with any large construction project, there are some details that will be finalized after the major work is completed. In particular, the millwork (custom-made furniture) and graphics have not yet been installed. The card reader security system should be activated soon.

The renovation of our Madison space was a very large and complicated project, made even more complex because a large number of staff remained in Madison during construction. Numerous and daunting challenges arose during the project and all were met successfully.

Also, the preparation of space in Crystal City and the move of staff back and forth was (and continues to be) a major project within a project. During this weekend, approximately 120 more staff will move back from Crystal City to Madison. This includes portions of staff from the Cataloging, Examining, and R&P Divisions, and all staff of the Copyright Technology Office (CTO). Simultaneously, some staff remaining in Crystal City have relocated to different floors so that we may vacate some complete floors and stop paying rent for them. Later in August, additional staff will move back. The final move is scheduled for October 5.

Tony Ramis, Elaine Kim, and the whole LC Facilities, Design, and Construction team have done and continue to do an outstanding job in organizing, designing, and implementing this huge project. Major contributions were also made by other LC support units, our contract designer Leo A. Daly, Inc., the Architect of the Capitol, many contractors, and CO staff. Finally, the success of this facilities effort would not be possible without the tireless and dedicated efforts of Ginny Kass, our Facilities Front Coordinator, who has gone far above and beyond the call of duty to ensure the best possible results at every stage.

Regarding both the reorganization and facilities efforts, the Guild and the Employee's Union have played crucial roles in our successes by effectively representing and communicating with staff and consulting regularly with

management. By identifying issues and proposing creative solutions, they have been of enormous help and their contributions are greatly appreciated.

Information Technology and Process

A tremendous amount of work on our new IT system has been completed, and some very important work remains to be done.

In early July, we began Beta testing of our electronic registration system. Over 1,000 applicants signed up to be Beta testers using a form on the CO website. We are periodically inviting groups of these Beta testers to open accounts and begin using the new system based on various critieria, such as the types and volume of claims filed, types of deposits submits, and forms of payment (credit card or deposit account). We are learning valuable lessons from working with this variety of applicants and we will make improvements to the system based on this experience before opening it to the general public.

In mid July, the conversion of over 20 million registration and recordation records from COPICS to Voyager was completed. This was the culmination of a years-long effort that was much more difficult and complex that we imagined at the outset. The public will very soon enjoy the benefits of the much more robust search capabilities of the Voyager system.

On August 6, we will begin to ingest a significant number of basic registration claims (PA, SE, SR, TX, and VA) into eCO, our new IT system, and we will implement our new Maintain Account, Receive Mail, and Register Claim processes on a large scale for the first time. We hope to be ingesting all basic claims into eCO soon. These will be claims submitted with our standard paper application forms and hard copy deposits. Certain claim types, such as group registrations, renewals, vessel hulls, etc. will continue to be processed in our old system until eCO is ready for them.

Work continues on the new system for the Acquire Deposit, Answer Request, and Record Document processes. We expect to begin implementing these in the coming months.

Mike Burke, Chief of CTO, Loretta Freeman, Jerry Tuben, and Gail Sonnemann (leader of the COPICS to Voyager project), and the entire CTO team, as well as SRA, our principal IT contractor, the CO process owners and process administrators, and many other CO staff have devoted countless hours of dedicated, creative, hard work on this very complex IT effort.

Looking ahead

It's important to recognize and take pride in how much we've accomplished already. But while we have completed major portions of the work on all fronts, we are really only now starting to implement the new system and processes that will result in major improvements in public service - the goal of reengineering in the Copyright Office.

This goal will not be achieved overnight. We can expect many challenges in the coming months as we simultaneously start up our new system and complete the work in progress in the old system. We will find glitches in our new system. Staff will need time to fully master new duties. Work may pile up during this transition period from the old to the new.

We will meet these challenges as we have those of the past because of the dedication, skill, and creativity of our staff. The coming months will not be easy, but they will be rewarding if we all keep our eyes on our goal. To make it happen, we must all support each other, be flexible, patient, and, as always, treat each other with respect. We're all in this together!

Thank you all for your contributions to our reengineering effort, and (if you've gotten this far) for reading this very long email.

Jeff Cole

Reengineering Project Manager

## BUDGET

### Seeking Support for CRS

The Librarian asked the conference committee to support a House allowance of $104.5 million and 705 FTEs for the Congressional Research Service (CRS). The Senate Appropriations Committee recommended $102.9 million and 696 FTEs—a reduction of nine from the existing level.

In its 2008 budget request for CRS, the Library asked for a total of $109.6 million. As part of the CRS total, the Library requested reimbursement for 2007 mandatory costs ($2.5 million for pay increases and $607,000 for price-level changes), plus reimbursement for 2008 mandatories ($4 million for pay raises and $676,000 for price-level changes).

The House and Senate Appropriations Committee both supported the 2008 pay increases. The House approved $377,000 for the price-level increase — about half the request — and the Senate committee approved $26,000 — about 4 percent of the amount requested. The Senate committee also recommended a $2 million reduction in contract-support funding.

"Reducing CRS's annual base budget for contracting by $2 million, and then further impacting the annual funding by decreasing its price-level request . . . will necessitate a 25 percent reduction in the support services that facilitate CRS staff work in research an analysis," the Librarian argued. "This impact is compounded by the loss of nine FTEs, which will reduce the overall analytical capacity of the staff."

The Senate Appropriations Committee in its report complained that in fiscal 2006 CRS spent $64,000 on two annual management retreats at "expensive off-site locations" (two annual management retreats happened to fall in the same fiscal year, in 2006). "These meetings can and should be held locally, particularly in times of severe budget constraints," the committee said.

The committee also said that CRS "often acts as if it were an independent agency, separate from the Library of Congress. CRS is in fact part of the Library of Congress, and its policies and procedures should reflect this fact." Billington

emphasized in his appeal letter that, "The budget for the CRS is reviewed by the Library during formulation and execution, and CRS complies with all Library policies and procedures."

The House committee in its report said it "appreciates the excellent work of the entire staff of the Congressional Research Service" and noted, upon his retirement, the "many years of dedicated, professional support provided by Paul Dwyer. On behalf of the entire Appropriations Committee, we thank you for your almost 40 years of outstanding service to the American people."

### Books for the Blind

The Library had requested $75.3 million and 128 FTEs to support the National Library Service for the Blind and Physically Handicapped (NLS) in fiscal 2008. This amount included a request of $19.1 million to start replacing analog cassette players that are becoming obsolete with playback machines that will play digital audio books recorded on easily distributed flash-memory cartridges.

Both the House and the Senate Appropriations Committees approved spending $12.5 million in fiscal 2008, the first year of Digital Talking Book Program.

The House Appropriations Committee in its report expressed support for the program and noted new language, which if approved, would allow the transfer of funding among accounts that could help support the NLS request.

The Senate committee in its report said: "The Committee fully supports this effort. Funding has been reduced below the request owing to dire budget constraints, but the Committee anticipates fully funding this initiative over the next several years."

The House approved $650,000 for telecommunications services for the blind, and the Senate committee recommended $600,000 for a telephone-based electronic audio newspaper service. The Library requested neither project. These proposed funding levels will be settled in conference.

### Copyright Office

The House and Senate Appropria-

tions Committee approved budget totals within $2 million of the requested $52 million for the Copyright Office. However, they offered about one-third of the $16.5 million appropriation requested by the Library and instead authorized spending $10 million in unobligated balances from prior years.

Both the House and Senate committee approved the $1 million requested to digitize and preserve copyright records prior to 1978.

In its report, the House Appropriations Committee said: "The Committee congratulates the management and staff of the Copyright Office on the completion of the 'Business Process Reengineering Project.' The multiyear project, which is estimated to produce multimillion dollar annual savings, is an example of how agencies need to adjust business processes, utilizing technology, new systems, equipment and employee training."

### Other Priorities

**Ft. Meade Construction:** Both the House and Senate turned down the Library's request for $43.9 million for construction of a logistics center at Ft. Meade, Md. The Library had intended to turn over the construction money to the Architect of the Capitol, which had not included the Library project among its priority construction projects.

The House Appropriations Committee said: "In the future, requests under the jurisdiction of the Architect, on behalf of the Library, will be included in the Architect's budget submission."

**Workforce Transformation:** The Library requested $276,000 for a project to train the Library's workforce for the digital age. The House approved the request; the Senate committee did not.

**Escape Hoods:** The Library requested $1.2 million for new escape hoods for staff members and visitors. The House approved the request but the Senate committee did not.

**Lincoln Bicentennial Exhibition:** The Library requested $1.4 million to mount an exhibition of Lincoln materials to mark the anniversary of his birth. The Senate committee approved the expenditure; the House did not. ◆

# THE LIBRARY OF CONGRESS
### WASHINGTON D.C. 20540

EQUAL EMPLOYMENT OPPORTUNITY
COMPLAINTS OFFICE

November 15, 2007

Dear Mr. Hubbard:

The Equal Employment Opportunity Complaints Office (EEOCO) is in receipt of your formal discrimination complaint (EEO Case No. 07-36) filed with our office on September 10, 2007. In your complaint and your response to § 11 of the complaint form, you alleged you have alleged that you were discriminated against when: 1) "the U.S. Copyright office has discriminated against me and other minorities, by not providing us with officials Position Descriptions"; 2) "the Collective Bargaining Agreement between the Library of Congress and the Employees Union, AFSCME Local 2477, is illegal"; and, 3) "In its report, the House Appropriations Committee congratulated the management and staff of the Copyright Office on the completion of the Business Process Re-engineering project. This is a misrepresentation of reality. "

Current case law provides, in part, that an agency shall reject a complaint which contains allegations which are outside the purview of the Library's regulation (LCR 2010-3.1). In order to pursue an EEO complaint, the employee must have standing; that is, the employee must frame his/her allegations in such a way as to "sufficiently" claim personal injury as a result of the discriminatory practices.

**Issue # 1:**

You have alleged that the U.S. Copyright office has discriminated against you by not providing you with an official Position Description. However, a review of your records reveals that you in fact have been provided a copy of this document. Accordingly, you have failed to allege a claim which is protected under Title VII of the Civil Rights Act, in that; it does not constitute a case or controversy which would confer standing on you which is a requirement that a real issue be presented. Standing requires you to suffer some personal harm which you could not (or at least did not) claim to demonstrate some special, particularized way in which you were hurt.

Furthermore, your complaint presents no case or controversy because the government (the Library of Congress) provided you with an official Position description. I have asked Ms. Susan Todd to provide you with an additional copy of this document.

**EXHIBIT B**

The D.C. Circuit has also required objectively tangible harm rather than "[m]ere idiosyncrasies of personal preference" to show an adverse employment decision. *Brown v. Brody*, 199 F. 3d 446, 457 (D.C. Cir. 1999). Adverse actions must be materially adverse to be actionable, meaning more than a "mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.*, 93 F.2d 132, 136 (7th Cir. 1993). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).

In order for you to establish that the Library undertook a tangible adverse employment action against you, you must show that you underwent "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Brown v. Brody*, 199 F.3d 446, 456 (D.C. Cir. 1999). Additionally, our circuit in *Forkkio v. Powell* , 306 F.3d 1127, 1131 (D.C. Cir. 2002) stated that "an employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm."

In *Brody* the Court of Appeals for the District of Columbia adopted the "tangible employment action" standard, which the Supreme Court had announced in *Burlington Industries, Inc. v. Ellert*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed. 2d (1999). Accordingly, "…tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." (*supra*) The U.S. Court of Appeals for the District of Columbia reiterated the "tangible employment action" standard requiring a showing that the allegedly discriminating, retaliatory acts, or changes had a material adverse effect upon the terms and conditions of the employee's employment. See also *Stella v. Mineta*, 284 F.3d 135 (D.C. Cir. 2002). As a result of having received your official position description you have failed to show standing or that you suffered an adverse employment action.

Assuming arguendo that you had not received an Official Position Description, you still would not have standing because you have not suffered a personal harm.

**Issue # 2:**

You have also alleged that the Collective Bargaining Agreement between the Library of Congress and the Employees Union, AFSCME Local 2477, is illegal. Under LCR 2010-3.1 the EEOCO can only accept complaints within the purview of this Regulation. The EEOCO accepts complaints of discrimination against a government employer such as the Library of Congress. The AFSCME Local 2477 is not your employer, and therefore this cannot be raised as an employment claim. Accordingly, the dismissal of this claim is proper in light of the fact that we

do not have jurisdiction to handle conflicts regarding Union contracts. This jurisdiction is vested with the Federal Labor Relations Authority (FLRA). Accordingly, this matter will not be considered as an EEO claim.

**Issue # 3:**

In your complaint you have also alleged that in its report, the House Appropriations Committee congratulated the management and staff of the Copyright Office on the completion of the Business Process Re-engineering project and that this is a misrepresentation of reality. This issue is also being dismissed because it has nothing to do with employment discrimination. You're personal disagreement regarding the LOC and the House Appropriations Committee is not a case or controversy under Tile VII of the Civil Rights Act. Accordingly, we will take no action in addressing this matter.

Requiring that a complainant be aggrieved is simply another way of stating that the complainant must have standing, or allege an injury in fact sufficient to state a cause of action for which relief can be granted. An agency is required to address EEO complaints only when filed by an individual who has suffered direct, personal deprivation at the hands of the employer; the agency's act must have caused some concrete effect on the aggrieved person's employment status. It is clear that this has not occurred in your case. The fact that you believe that the Union contract is illegal or that any controversy exist between the LOC and the House Appropriations Committee is not a legal basis under the statutory authorities which the EEOCO enforces. As a result, your complaint contains allegations which do not come within the purview of our regulation.

You have filed a number of discrimination complaints which alleged frivolous and non-meritorious matters. The Equal Employment Opportunity Complaints Office has the inherent authority to control and prevent abuse of its processes and procedures. The procedures contained in the Library's regulations provide the process by which claims of discrimination are processed in the Federal sector, with a goal of eliminating or preventing unlawful employment discrimination. The procedures set forth should not be misconstrued as substitutes for either inadequate or ineffective labor-management relations or an alternative or substitute for labor-management disputes.

Case precedent provides for dismissal of complaints that are part of a "clear pattern of misuse of the EEO process for a purpose other than the prevention and elimination of employment discrimination." The criteria required to justify dismissal for abuse of process must be applied strictly. These criteria require:

(i) Evidence of multiple complaint filings; and

(ii) Claims that are similar or identical, lack specificity or involve matters previously resolved; or

(iii) Evidence of circumventing other administrative processes, retaliating against the agency's in-house administrative processes or overburdening the EEO complaint system.

On rare occasions, the EEOCO has applied abuse of process standards to particular complaints. Occasions in which application of the standards are appropriate must be rare, because of the strong policy in favor of preserving a complainant's EEO rights whenever possible.

Additionally, Mr. Howard R. L. Cook has participated in numerous EEO cases to understand that these claims are not actionable. The record reveals that you deliberately falsified your allegation that you had not received an Official Position Description when in fact you had. Moreover, your representative and you have attempted to utilize the EEO process as an alternative or substitute for your personal labor-management dispute.

In the present case, you appear to be making a concerted attempt to retaliate against agency officials, not to obtain relief from discrimination. More importantly, it appears that you are using the EEO complaint process for purposes other than thwarting discrimination.

You are hereby cautioned that all future complaints filed by you or identifying Mr. Cook as your representative will be closely scrutinized and reviewed for cancellation or dismissal as "Abuse of the EEO Complaint Process. Further, your use of the process to raise your personal frustration in your employment, regardless of the merit of the claim, or whether similar or the same matters have been addressed in prior complaints, overburdens the administrative process. The EEOCO cannot permit a party to utilize the EEO process for this illegitimate goal, nor can it allow individuals to overburden the system, which is designed to protect individuals from discriminatory practices. Therefore, it is my decision to dismiss your entire complaint. You are further advised that the EEOCO will decline to entertain your enumerated matters any further in any future complaint filings of this nature, and you will be provided with your appeal rights to proceed to the appropriate U.S. District Court.

For the foregoing reasons stated above, I hereby cancel your complaint.

## APPEAL RIGHTS

In accordance with LCR 2010-3.1, Section 7 (E), you are hereby advised that my decision to cancel your complaint constitutes a Final Agency Decision. Should you be dissatisfied with this decision to not accept your EEO complaint in Case No. 07-36, you have the right to file a civil action in the appropriate U.S. District Court within ninety (90) days of receipt of this letter. If you decide to file a civil action, and do not have or cannot afford the services of an attorney, you may

request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. The Court may appoint an attorney in such circumstances as the Court deems just pursuant to federal statute (42 U.S.C. S2000e-5 (f) (1)). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits.

Sincerely,

Ricardo H. Grijalva
Chief, EEO Complaints Office
Office of Workforce Diversity
Library of Congress


Enclosure:

Mr. David M. Hubbard, Sr.
2333 Woodbark Lane
Suitland, Maryland 20746-3828

Representative:

Mr. Howard R.L. Cook
10323 Sea Pines Drive
Mitchellville, Maryland 20721

Forwarded via Regular and Registered Mail on November 15, 2007; Return Receipt Requested.

UNITED STATES GOVERNMENT

**Memorandum**

**Certified Mail #7006 0810 0005 5159 6474**

**LIBRARY OF CONGRESS**

TO: David M. Hubbard Sr.
    EEO Case #07-36
    2333 Wood Bark Lane
    Suitland, MD 20746-1377

Date: August 29, 2007

FROM:  Wilbur R. Valentine, PhD
       EEO Counselor

**SUBJECT : NOTICE OF FINAL INTERVIEW AND RIGHT TO FILE A FORMAL COMPLAINT**

This is notice that on the above date, I conducted the final counseling interview in connection with the matter you presented to the Equal Employment Opportunity Complaints Office. Since the matter has not been resolved to your satisfaction, you may now file a formal complaint if you still believe you have been discriminated against based on race, color, religion, sex, national origin, age, physical or mental disability, sexual harassment or subjected to reprisal actions.

Your complaint of discrimination must be in writing, on the proper form (458), and filed with the Assistant Chief, Equal Employment Opportunity Complaints Office, LM-626, Library of Congress, Washington, D.C. 20540-2120 not later than ten (10) workdays after receipt of this notice. Your complaint, whether filed by you or your representative(s), must be signed by you as complainant.

I am attaching a copy of LCR 20 10-3.1 so you may be thoroughly familiar with your rights under this program and two Complaint of Discrimination forms. Additional forms are available at the Equal Employment Opportunity Complaints Office (above address).

Attachments

BUY U.S. SAVINGS BONDS THROUGH THE PAYROLL

**EXHIBIT C**

September 4, 2007

Dr. Wilbur R. Valentine
401 Georgia Court
Towson, Maryland 21204

Dear Dr. Valentine:

Your letter dated August 29, 2007 is totally incorrect. There has been no **final interview** conducted by you that I or my representative is aware of. LCR 2010-3.1 does provide for a final counseling interview. Since there has been no final interview LCR 2010-3.1, has been violated.

There has been only **one (1)** interview conducted by you with me and my representative. This interview was conducted on **Tuesday, August 21, 2007 at 2:00p.m in the Equal Employment Opportunity Office room 626.**

Sincerely,
David M. Hubbard Sr.
EEO Case # 07-36

*David m. Hubbard Sr*

**cc:** Ricardo H. Grijalva, Chief, Equal Employment Opportunity Office,
    Office of Workforce Diversity

**RECEiVED**

SEP 2 0 2007

Equal Employment Opportunity
Complaints Office

**EXHIBIT D**

Equal Employment Opportunity Office                October 18, 2007
Mr. Ricardo Grijalva, Chief
101 Independence Avenue S. E.
Washington, D. C. 20540

Dear Mr. Grijalva:

    Please advice me of the status of my EEO complaint.  My EEO case number is: **07-36.**  You may contact me at **dhub@loc.gov.**

Sincerely,
David M. Hubbard Sr.

cc: Howard R. L. Cook

**RECEIVED**

OCT 1 8 2007

Equal Employment Opportunity
Complaints Office

**EXHIBIT E**

**THE LIBRARY OF CONGRESS**
WASHINGTON, D.C. 20540

EQUAL EMPLOYMENT OPPORTUNITY
COMPLAINTS OFFICE

October 22, 2007

**Subject:** EEO case No. 07-36

Dear Mr. Hubbard:

I am in receipt of your correspondence received on October 18, 2007, regarding the status of your EEO Complaint. (EEO Case No. 07-36). Your charge of discrimination was filed on September 10, 2007. You have alleged that you and a "Class" of employees were denied "Valid Positions Descriptions". Additionally, you have filed a complaint against a Collective bargaining Unit (AFSCME 2477). Upon receipt of your informal allegations which you filed on August 15, 2007, we prepared a "sign-in" sheet so that the members of the Class could opt-in to the Class Action case for certification purpose. Class actions complaints must be certified prior to acceptance.

Since the filing of your allegations, not one member of the Class has visited the EEO Complaints Office to sign up for the class action case. As a courtesy to you, as the "Class Representative" we will hold this "Class Action Sign-In" sheet open until this Friday, October 26, 2007. Please notify your class members to stop by and sign the "Class Complaint" sign-in sheet so that these members may be identified as members of this important class complaint. Should you have any questions regarding this matter, please do not hesitate to contact me at area code (202) 707-6099. Thank you for your attention to this matter.

Sincerely,

*Ricardo H. Grijalva*

Dr. Ricardo H. Grijalva
Chief, EEO Complaints Office
Office of Workforce Diversity
Library of Congress

cc:
Mr. David M. Hubbard, Sr.
2333 Woodbark Lane
Suitland, Maryland 20746-1377

Mr. Howard R.L. Cook
10323 Seapines Drive
Mitchellville, Maryland 20721

Forwarded via Regular and Registered Mail on October 22, 2007; Return Receipt Requested.

**EXHIBIT F**

From: David M. Hubbard Sr., Complainant                    October 22, 2007
      EEO Case No. 07-36.

To:   Ricardo H. Grijalva, Chief, Equal Employment
      Opportunity Complaints Office, Office of Workforce
      Diversity (RESPONSE TO THE RICARDO H. GRIJALVA LETTER OF
           OCTOBER 22, 2007 regarding EEO COMPLAINT CASE NO.
Dear Mr. Grijalva:                              07-36.)

      Your email to me in response to my request concerning the status of
EEO Case No.07-36 is erroneous. It is erroneous because I did not file any
complaint against AFSCME Local 2477. It is also erroneous because your
email claims that class members are required to sign onto a class action. You
did not state any section of any Library of Congress regulation or law which
provides for such a requirement. Further, your email is erroneous
completely, because I did name the individuals who were being charged with
discrimination in my complaint. I **did not** name AFSCME Local 2477,
among those individuals. However, I did refer to the Union contract as
containing illegal provisions. I did request that the Library of Congress
management **"cease and desist"** from practicing illegal discrimination and
also requested Library management and the Union to cease and desist from
agreeing to illegal provisions in the contract between the Library of Congress
and AFSCME Local 2477.

      You offered no proof that you had made arrangements for any class
members to sign onto the Class Action, nor did you give the opportunity to
sign on. **Class certification** is not dependant upon whether individuals
signed onto the Class Action. At this point Class certification is not an issue
because the Class action remains at the EEO counselor stage of the process.

Sincerely,
David M. Hubbard Sr.

Lead Representative
EEO Case No. 07-36

**RECEIVED**

OCT 2 3 2007

Equal Employment Opportunity
Complaints Office

**EXHIBIT G**

**cc:** Howard R. L. Cook, Representative

**RECEiVED**

Ricardo H. Grijalva                                    November 28, 2007
Chief, EEO Complaints Office          NOV 2 8 2007
Office of Workforce Diversity
Library of Congress                         Equal Employment Opportunity
                                                         Complaints Office

   RE: Response to the Ricardo H. Grijalva Letter of November 15,
     2007, to David M Hubbard  Sr., EEO Case No. 07-36.

Dear Mr. Grijalva:

   This letter is a response to your letter to me and my representative on
November 15, 2007.

   In your letter you accuse me of making a false statement in regard to
my official position description. Your statement that I had made a false
statement is false. In your position as Chief of the EEO Complaints Office,
you of all people are expected the most to tell the truth.  The fact is I did not
receive an official position description until after I had filed my
discrimination complaint, EEO Case No. 07-36.

   EEO Case No. 07-36 is **not** a frivolous case as you claim. It is in fact a
most serious case that you do not wish to process because of your own
incompetence.  There has been no investigation into the legal charges which
have been made in the instant discrimination complaint. **LCR 2010-3.1 and
LCR 2010- 3.2 require you to conduct an investigation.**  Since, you have
not done so you are in violation of these regulations.  As has been pointed out
to you previously, the regulations under your charge have not been followed
in any sense of providing **equal opportunity and due process.** There has not
yet been granted a final interview as provided in LCR 2010-3.1, nor has the
provisions of LCR 2010-3.2 been followed.  The second step in the
regulation has not been followed.  Only the first basic step under **pretense**
was followed.

   Another serious violation of the Library of Congress regulations has
been committed by you.  As provided in the regulations you are not the
person to render the final agency decision.  As the regulations now stand the

**EXHIBIT H**

Librarian of Congress is the responsible person to render the final agency decision. You site a number of court cases in your letter, dated November 15, 2007. However, before you site these cases the **evidence, facts, and information** have to be measured according to the standards established by these cases. You have not provided any evidentiary process to measure the facts, evidence, and information against the cases you have sited. Rather, you have chosen to believe that anything you say is final and acceptable.

One case you did not site which is specific to you and the Library of Congress is the decision rendered by Henry H. Kennedy Jr., United States District Court Judge in the **Christine Mills Class Action.** Judge Kennedy issued his decision on May 16, 2006. **See Christine Mills, et al, Vs. James H. Billington, 04-02205, (DDC).** Judge Kennedy very directly noted in his Memorandum Opinion and Order that you had not followed the provisions of your own regulations when you cancelled the **Christine Mills Class Action.** You have repeated your same *illegal* action in the instant case. Further, on page 6 of Judge Henry H. Kennedy Jr's Memorandum Opinion and Order he specifically mentions you, Ricardo H. Grijalva, Chief of the Equal Employment Opportunity Office, for not being in compliance with Library of Congress regulations. Judge Kennedy went on to say that the Library of Congress, to dismiss the Mills Class Action, did not specify the precise regulatory basis for the dismissal. The same holds true in the instant Equal Employment Opportunity Complaint Office complaint.

In your November 15, 2007 letter you threaten the complainant. We understand your threat and also understand it to be **illegal.** You have on prior occasions threatened a number of other employees attempting to obtain redress from the Equal Employment Opportunity Complaint Office. Your office is required to be a friendly place for employees who have problems regarding discrimination of all types.

Respectfully Submitted,

David M. Hubbard Sr.

Complainant

cc:
    Howard R. L. Cook, Representative
    Michael J. Snider, Esq.
    Jeffery C. Taylor, Esq.
    James H. Billington, Librarian of Congress
    JoAnn C. Jenkins, Chief of Staff